IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LOLA HITHON,             }
                         }
    Plaintiff,       }   CIVIL ACTION NO.
                         }   02-AR-1835-M
v.                       }
                         }
TYSON FOODS, INC.,       }
                         }
    Defendant.       }

FILED
04 JUL 23 PM 2:01
N.D. OF ALABAMA

ENTERED
JUL 23 2004

**MEMORANDUM OPINION**

    Before the court is the motion for summary judgment (Dkt. #42) and evidentiary submissions filed on April 16, 2004 by defendant, Tyson Foods, Inc. ("Tyson"). The complaint of plaintiff, Lola Hithon ("Hithon"), contains nine counts: (1) race discrimination in violation of Title VII with respect to "a promotion and raise she sought, but was treated less favorably and paid less in comparison to her white co-workers due to her race"; (2) race discrimination in violation of 42 U.S.C. § 1981 with respect to "the promotions and pay raises she sought and was wrongfully denied the promotions"; (3) disparate impact in violation of Title VII and 42 U.S.C. § 1981; (4) disparate treatment in violation of Title VII and 42 U.S.C. § 1981 in that "[b]lack employees are treated less favorably and paid less in comparison to their white co-workers and due to their race"; (5) intentional infliction of emotional distress under Alabama law; (6) negligent hiring, training, supervision, and retention under Alabama law; (7) breach of

67

contract under Alabama law; (8) retaliation in violation of "28 [sic] U.S.C. Section 2000e et seq."; and (9) breach of implied covenant of good faith and fair dealing under Alabama law. See Dkt. #22.[1] Tyson moves for summary judgment on all counts.

## Tyson's Motion to Strike

Included within Hithon's evidentiary submissions is the affidavit of Melody Lloyd. (Dkt. #60, Ex.2). Lloyd's affidavit attributes a discriminatory statement to John Pittard, the Tyson supervisor who decided not to promote Hithon in July 2000. Tyson moves to strike the Lloyd affidavit because: Lloyd has never been disclosed as a fact witness pursuant to Rule 26, F.R.Civ.P.; Lloyd's affidavit contains inadmissible hearsay; and Lloyd's affidavit is not notarized. The motion to strike is due to be granted.

The discovery deadline in this action was January 26, 2004. Hithon's disclosure of Lloyd follows Tyson's motion for summary judgment and comes after all discovery deadlines have passed. Tyson's ability to depose Lloyd is non-existent. Additionally, Hithon offers as proof of a matter at issue a statement allegedly made by Pittard to another employee, Lloyd, who purports to have

---

[1] In Hithon's opposition brief, she concedes counts 5, 7,and 9. She characterizes her action as arising "out of two primary events: 1) the denial of a promotion to the Albertville Complex Human Resource [M]anager position in February 2000; and 2) the denial of a promotion to the Oxford Complex Human Resource Manager in July 2000." (Dkt. #61 at 2).

learned of Pittard's statement from yet another employee, Lisa Burdick. This is the grossest form of hearsay and is due to be excluded. Tyson's final argument is without merit. Lloyd's affidavit does substantially comport with the requirements of 28 U.S.C. § 1746(2). Consequently, it would not have needed to be notarized, even though it has now been notarized. The notarization added nothing.

    The court will strike the affidavit by separate order.

### Summary-Judgment Facts

    Hithon, who is black, began her employment at Tyson on July 1, 1985 as an hourly saw operator. Since 1987 she has held various positions including accounting clerk, front-line supervisor, retention supervisor, plant facilitator, employment supervisor, shift personnel manager, plant coordinator, shipping superintendent, shift manager, and plant personnel manager. Hithon's performance has been exemplary and without disciplinary action.

    All of Hithon's employment with Tyson has been at Tyson's Gadsden processing plant. Tyson organizes its Alabama operations into three "complexes": Albertville, Oxford, and Snead. Each complex is run by a complex manager who has final authority and is the final decision-maker over the complex and its subordinate facilities. The Gadsden plant is a subordinate facility in the Snead complex. During the relevant time period, the Albertville

complex manager was Ricky Walker, who is white, and the Oxford complex manager was John Pittard, who is white.

In February 2000, Hithon applied for the position of complex human-resources manager for the Albertville complex (the "Albertville position"). The position opened when Jerry Phillips, who is white, resigned. Although Tyson has a policy of promoting from within the company, Phillips was awarded the position when he announced that he desired to return. Phillips was placed back into the position on February 21, 2000.

In July 2000, Hithon applied for the position of complex human-resource manager for the Oxford complex (the "Oxford position"). Pittard posted the opening and interviewed Hithon and three other candidates: Ever Higgins, who is black; Jacinta Carter, who is black; and Lisa Burdick, who is white. Pittard ranked the candidates in six areas: education, HR manager experience, total HR experience, references, community involvement, willingness to relocate, motivation, presence, and relationship with the union.[2] Pittard's first choice was Carter, but she declined the position. Instead, Carter accepted the position of human-resource manager for the Pine Bluff, Arkansas complex.

Burdick was Pittard's second choice. Burdick was the human-resources manager of the Ashland facility at the time she applied.

---

[2] Tyson reproduces Pittard's decision matrix in its briefs. (Dkt. #43 at 11 & Dkt. #65 at 10).

She had been in that position since December 1998 and had successfully implemented Tyson's "RISE" program at that facility.[3] Additionally, Burdick had a college degree. Hithon had served as the human-resources manager of the Gadsden facility since March 1999 and only had some college. Pittard offered the position to Burdick in late July 2000. She accepted.

On July 25, 2000, Hithon began the process of filing a formal grievance.[4] Hithon disagreed with Pittard's ranking of the candidates and his ultimate selection, Burdick. She further complained that immediately following her interview for the position, Pittard questioned another employee about the trial of a case that had been brought by Hithon's husband and another man named Ashe against Tyson alleging race discrimination. Hithon believed, and alleges, that Pittard's selection was racially motivated.

### Summary-Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter

---

[3] RISE "was a program put in to help work turnover and control costs through overtime reduction." Burdick took the idea behind the policy, created and implemented a program for the Ashland facility that resulted in a dramatic reduction in turnover rate.

[4] Tyson established a four-person review panel and hired an independent consulting firm to oversee the review. The panel affirmed Pittard's selection of Burdick for the Oxford position three to one -- the one black panelist concluded that Higgins was the best candidate. All four panelists ranked Hithon last.

of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir.1997). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id.* On a motion for summary judgment, the court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen,* 121 F.3d at 646. The court cannot make credibility determinations, weigh the evidence or draw inferences from the evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The moving party bears the burden of informing the court of the basis for its motion and demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp.,* 477 U.S. at 323, 325. To withstand a motion for summary judgment, the non-moving party may not simply rest on the pleadings. Rather, it **must** "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial...." *Id.* at 322. If the non-moving party fails to make this showing,

then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, at 323.

## Analysis

Initially, the court finds that Hithon's claims regarding the Albertville position are untimely. Charges must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). Failing to file charges within 180 days bars plaintiff from filing such a claim based on this alleged act of discrimination. *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir.1998). Hithon filed her EEOC complaint on January 3, 2001, more than ten months after Phillips was returned to the Albertville position.

Hithon admits that her claim regarding the Albertville position was filed more than 180 days after the violation, but asserts an equitable exception -- continuing violation. She argues that the promotion denials in February and July 2000 were part of a series of discriminatory acts. However, the Supreme Court has defined "discrete discriminatory acts" to include "termination, **failure to promote**, denial of transfer, or refusal to hire." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (emphasis added). Each promotion denial "constitute[d] a separate actionable 'unlawful employment practice.'" *Id*. The equitable doctrine of continuing violation does not bridge Tyson's decision in February 2000 regarding the Albertville position to its decision

in July 2000 regarding the Oxford position. Hithon's claim regarding the Albertville position is untimely and Tyson is due summary judgment on this claim.

Hithon's claims filed pursuant to 42 U.S.C. § 1981 are also untimely. Hithon commenced this action by filing her complaint on July 25, 2002. The forum state's statute of limitations for personal-injury claims -- two years in Alabama -- applies to these claims. *Taylor v. Alabama Intertribal Council*, 261 F.3d 1032, 1034 (11th Cir.2001). Tyson returned Phillips to the Albertville position on February 21, 2000. Hithon's complaint was filed more than two years thereafter and, therefore, Hithon's § 1981 claim regarding the Albertville position is beyond the two-year statute of limitations and is barred.

Turning to the burden in this mixed-motive case, Hithon asserts that the Supreme Court's recent decision in *Desert Palace v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003), has eviscerated 30 years of well-established precedent. She argues that the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), no longer exists. (Dkt. #61 at 25). However, nowhere in *Desert Palace* does the Supreme Court even intimate, much less say, that it is overruling, restricting, or clarifying *McDonnell Douglas*. *Desert Palace* clarifies that a Title VII plaintiff can establish an employer's liability "using direct

or circumstantial evidence." 123 S. Ct. at 2154. The decision does nothing more. To further illustrate this point, this court notes that more than a year after the *Desert Palace* decision, no Eleventh Circuit authority embraces Hithon's interpretation.[5] Accordingly, Hithon's promotion, disparate treatment, and retaliation[6] claims will be evaluated using the familiar, 30-year-old *McDonnell Douglas* framework.

This requires that Hithon first raise an inference of discrimination or retaliation by establishing a *prima facie* case. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994). If a *prima facie* case is established, the burden shifts, and Tyson must proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir.1994). Hithon can still survive summary judgment by then proffering evidence "to permit a reasonable fact finder to conclude that the employer's proffered non-discriminatory reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir.2000) (en banc);

---

[5] *See Wilson v. B/E Aerospace, Inc.*, 2004 WL 1459558, *5 (11th Cir. June 30, 2004) (holding *McDonnell Douglas* framework applies to disparate-treatment claims supported by circumstantial evidence).

[6] Although Hithon's complaint refers to "28 U.S.C. § 2000e," instead of "42 U.S.C.," as the basis of her retaliation claim, it is sufficiently clear that she is proceeding under Title VII to put Tyson on notice of this claim.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). This final shift is determinative in this case.

Assuming *arguendo* that Hithon had established a *prima facie* case, she has not rebutted Tyson's legitimate, nondiscriminatory rationale for selecting Burdick rather than her.[7] An employer's decision as to who is the most qualified for a position is not a decision that should be re-examined by the courts as long as the decisions are not unlawfully motivated. *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir.2000). While prior cases suggest that a subjective criterion "cannot be relied upon by an employer seeking to defeat the plaintiff's prima facie case," *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir.1998), the Eleventh Circuit has recently clarified that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. A.I. Transp.*, 229 F.3d 1012, 1034 (11th Cir.2000)(en banc). The issue thus becomes whether Tyson has offered a "clear and reasonably specific factual basis" for Pittard's articulated subjective reason.

In addition to the decision matrix that Pittard created, Tyson points to Burdick's college education and her implementation of the

---

[7] Consequently, the court does not address whether Hithon has established a *prima facie* case of those claims.

RISE program as making her the superior candidate. Pittard and Tyson made the subjective judgment that these qualifications counted for more than Hithon's experience. The court does not sit to resolve the wisdom or accuracy of Tyson's conclusion. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir.2002). The only question is whether discriminatory animus or retaliation motivated the decision. *Id.* Hithon's subjective beliefs and self-serving speculation that she was more qualified than Burdick, that Burdick's implementation of the RISE program was not successful, and that Pittard's offer to Carter was a sham are inapposite. Whether the proffered reason is pretext rests upon the employer's provable motive, not the employee's self-serving perception of it. *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (citing *Billet v. CIGNA Corp.*, 940 F.3d 812, 818-22 (3rd Cir. 1991)). Tyson's motion will be granted on these claims.

Hithon also asserts disparate-impact claims pursuant to Title VII and 42 U.S.C. § 1981. She claims that the administration of Tyson's Albertville and Snead complexes are 100% white, while "the corresponding hourly workforce is comprised of 80% minorities." (Dkt. #22 ¶33). Disparate impact discrimination "prohibits neutral employment practices which, while non-discriminatory on their face, visit and adverse disproportionate impact on a statutorily-protected group." *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir.2000). In order to establish a *prima facie* case,

"the plaintiff must offer statistical evidence of a kind and degree to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988); *see also Edwards v. Wallace Community College*, 49 F.3d 1517, 1520 (11th Cir.1995) (holding that a "plaintiff must identify a specific employment practice that leads to disparate impact"). Although Hithon's statistics show that a significant majority of the administration is white, she fails to identify **any practice** -- through statistics or otherwise -- that causes the disparity. *See, e.g., Evans v. McClain, Inc.*, 131 F.3d 957, 963 (11th Cir.1997) (rejecting plaintiff's theory that disparate impact was shown when employer had only three black supervisors despite employing 650 individuals in eight plants). Moreover, she provides no statistics on the racial make-up of the qualified applicant pool. Therefore, Tyson's motion will granted on this claim.

The claims brought under Alabama law ring a bit hollow but need not be addressed by this court. They will be dismissed without prejudice after the basis for supplemental jurisdiction disappears.

An appropriate order will be entered.

DONE this 23rd day of July, 2004.

                                               WILLIAM M. ACKER, JR.
                                               UNITED STATES DISTRICT JUDGE